File Name: 09a0048n.06
Filed: January 21, 2009

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 08-5190

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

LINDA WOLFANGER,

    Plaintiff-Appellant,

v.

LAUREL COUNTY, KENTUCKY; FISCAL
COURT OF LAUREL COUNTY, KENTUCKY;
SHERIFF'S DEPARTMENT OF LAUREL
COUNTY, KENTUCKY; GREG POYNTER, in
His Individual and Official Capacity as Deputy
Sheriff of Laurel County, Kentucky; and GENE
HOLLON, in His Official Capacity as Sheriff of
Laurel County, Kentucky,

    Defendants-Appellees.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

_____/

Before:    MARTIN and McKEAGUE, Circuit Judges; and COLLIER, Chief District
Judge.[*]

**CURTIS L. COLLIER, Chief District Judge.** Plaintiff-Appellant Linda Wolfanger sued

Defendants-Appellees alleging use of excessive force and failure to properly train officers in

violation of 42 U.S.C. § 1983, a violation of the Americans with Disabilities Act ("ADA"), and

various state law claims. On a motion by Defendants, the district court granted summary judgment

_____

[*] The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern
District of Tennessee.

on all federal claims and dismissed the state law claims without prejudice.

## I.

On October 15, 2005, Plaintiff's husband, Lee Wolfanger, was shot by Laurel County Deputy Greg Poynter ("Deputy Poynter") in the course of responding to a 911 call placed by Linda Wolfanger. Plaintiff became alarmed after Lee Wolfanger, who had left the house following a minor family dispute, refused to come back inside. She told the emergency dispatcher Lee Wolfanger was armed with a .44 caliber handgun, was depressed and on pain medication, and she believed he might be a danger to himself or others. With this information, Deputy Poynter, who was unexpectedly alone due to a variety of circumstances, arrived at the scene.

Lee Wolfanger's daughter, Mindy Wolfanger, spoke with Deputy Poynter and directed him to the gravel bus turnaround across the road from the Plaintiff's house, where Lee Wolfanger was standing. Deputy Poynter exited his vehicle and asked Mindy Wolfanger to return to the house. He repeatedly ordered Lee Wolfanger to drop his weapon. Lee Wolfanger told Deputy Poynter to get off his land and said something else Deputy Poynter could not understand. According to Deputy Poynter, Lee Wolfanger then raised his right hand and pointed a gun at him. Deputy Poynter fired one shot, hitting Lee Wolfanger in his abdomen on the right side. Law enforcement officers found a gun and a quad cane near where Lee Wolfanger fell. Lee Wolfanger subsequently died from injuries caused by the gunshot.

## II.

We review the grant of summary judgment *de novo*, using the same standard as the district court. Summary judgment should be granted where "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### III.

According to Plaintiff, a genuine issue of material fact exists as to whether Deputy Poynter's use of deadly force was reasonable. Plaintiff alleges the object in Lee Wolfanger's right hand was a quad cane, since Mindy Wolfanger recalled seeing the cane on Lee Wolfanger's right side shortly before the shooting and the cane was forward and to Lee Wolfanger's right after he fell. However, as stated by the district court judge, this is not a genuine issue of material fact since Plaintiff presents no evidence contradicting Deputy Poynter's assertion Lee Wolfanger pointed the gun at him. Even accepting Plaintiff's version of the facts and assuming Lee Wolfanger had the cane on his right side, pictures in the record show the quad cane could stand on its own or be looped over the arm (Joint App. pp. 566-70). Thus, Lee Wolfanger could have both the gun and the cane on the right side of his body. Plaintiff's argument that Lee Wolfanger had the cane in his right hand does not conflict with Deputy Poynter's claim Lee Wolfanger held the gun in his right hand and pointed it at Deputy Poynter. Our precedents clearly establish the reasonableness of deadly force where the officer perceives a "serious threat of physical harm to the officer or others in the area." *Sample v. Bailey*, 409 F.3d 689, 697 (6th Cir. 2005) (citing *Boyd v. Baeppler*, 215 F.3d 594 (6th Cir. 2000)). There is no genuine issue of material fact as to whether a constitutional violation occurred. The shooting

was unfortunate, but not unreasonable. As found by the district court, summary judgment was appropriate.

Plaintiff also asserts the district court erred in granting summary judgment to Defendants on failure to train and ADA violation. The district judge correctly applied the law to these claims and we affirm the dismissal for the reasons given in the district court's opinion.

## IV.

For the reasons stated by the district judge, we **AFFIRM**.